UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
JANITA H.,

                             Plaintiff,       <u>DECISION AND ORDER</u>
                                               7:21-CV-05199-GRJ

       v.

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

     In July of 2014, Plaintiff Janita H.[1] applied for Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 14).

     This case was referred to the undersigned on October 24, 2022. Presently pending are the parties' Motions for Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 21,

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

30). For the following reasons, Plaintiff's motion is due to be granted, the Commissioner's motion is due to be denied, and this case is remanded for further proceedings.

## I.  BACKGROUND

### A.   Administrative Proceedings

Plaintiff applied for benefits on July 15, 2014, alleging disability as of that date. (T at 304-309).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on November 29, 2016, before ALJ Sheena Barr. (T at 42-67).  On April 14, 2017, ALJ Barr issued a decision denying, in part, the application for benefits. (T at 140-51).  ALJ Barr found that Plaintiff was disabled within the meaning of the Social Security Act beginning on February 28, 2017, but was not disabled or entitled to benefits prior to that date. (T at 150).

Plaintiff sought review and the Appeals Council granted the request and remanded the matter for a new hearing. (T at 156-59).  A hearing was held on March 29, 2018, before ALJ Zachary Weiss. (T at 68-123).  On June 22, 2018, ALJ Weiss issued a decision denying Plaintiff's application for benefits. (T at 929-52).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 15

ALJ Weiss reversed the favorable portion of ALJ Barr's decision and found that Plaintiff had not been disabled, and was not entitled to benefits, for the entire period between July 15, 2014 (the application date) and June 22, 2018 (the date of his decision). (T at 951-52).

The Appeals Council denied Plaintiff's request for review (T at 1-6). Plaintiff sought review in the United States District Court for the Southern District of New York.  On September 28, 2020, the Honorable Andrew L. Carter, Jr., United States District Judge, issued an Opinion and Order reversing the denial of benefits and remanding the matter for further proceedings. (T at 980-998).

An administrative hearing was held on January 27, 2021, before ALJ Weiss. (T at 914).  Plaintiff appeared with an attorney and testified. (T at 919-21).  The ALJ also received testimony from Dr. Hopper, a medical expert. (T at 922-24).

B.    ALJ's Decision

On February 26, 2021, ALJ Weiss issued a second decision denying the application for benefits. (T at 888-904).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2014 (the date she applied for benefits). (T at 893).  The ALJ concluded that Plaintiff's diabetes mellitus, hypertension, hyperlipidemia, obesity, major depressive disorder,

anxiety disorder, and history of substance use disorder were severe impairments as defined under the Act. (T at 893).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 894).

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, as defined in 20 CFR 416.967(c), provided such work involved no more than simple, routine, and repetitive tasks in a low-stress setting, defined as involving only occasional decision-making, no changes in the work setting, and only occasional contact with coworkers. (T at 896).

The ALJ noted that Plaintiff has no past relevant work. (T at 903).

Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 904).  As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between July 15, 2014 (the application date) and February 26, 2021 (the date of the ALJ's decision). (T at 904).  On April 21, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's

final decision. (T at 1-6).  ALJ Weiss's second decision is considered the

Commissioner's final decision.

### C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing

a Complaint on June 11, 2021. (Docket No. 1).  On April 4, 2022, Plaintiff

filed a motion for judgment on the pleadings, supported by a memorandum

of law. (Docket No. 21, 22).  The Commissioner interposed a cross-motion

for judgment on the pleadings, supported by a memorandum of law, on

September 9, 2022. (Docket No. 30, 31).  On September 30, 2022, Plaintiff

submitted a reply memorandum of law in further support of her motion.

(Docket No. 32).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a

claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

The court's review is limited to "determin[ing] whether there is substantial

evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566

F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.   *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....”  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Although Plaintiff complains the ALJ failed to focus upon the evidence from the January 27, 2021, hearing—and instead relied primarily upon the evidence from the previous hearing on March 29, 2018—the substantive challenge to the ALJ's decision focuses on the ALJ's assessment of the medical evidence, and in particular the failure of the ALJ to give appropriate weight to the opinions of Plaintiff's treating psychiatrists.  The Court, therefore, will first discuss the medical opinion evidence in the record and then discuss the two critical flaws in the ALJ's assessment of the medical opinion evidence.

### A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at \*14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

A "treating physician" is the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

An opinion from a treating physician is afforded controlling weight as to the nature and severity of an impairment, provided the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

However, treating physician opinions are not always dispositive.  For example, an opinion will not be afforded controlling weight if it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

To determine how much weight a treating physician's opinion should be given, the ALJ considers the "*Burgess* factors" identified by the Second Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019)(following *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

The *Burgess* factors are also applied to the opinions of non-treating physicians, "with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant." *McGinley v. Berryhill*, No. 17 Civ. 2182, 2018 WL 4212037, at *12 (S.D.N.Y. July 30, 2018).

### 1. Dr. Herivaux

In May of 2016, Dr. James Herivaux, a treating psychiatrist, completed a medical source statement.  Plaintiff was receiving personal therapy weekly and medication therapy monthly. (T at 568).  Dr. Herivaux assigned a Global Assessment of Functioning ("GAF") score[3] of 50. (T at 568). "A GAF in the range of 41 to 50 evidences '[s]erious symptoms (e.g.,

---

[3] The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *Pollard v. Halter*, 377 F.3d 183, 186 (2d Cir. 2004).

suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Zabala v. Astrue*, 595 F.3d 402, 406 n.2 (2d Cir. 2010)(citation omitted).

Dr. Herivaux opined that Plaintiff would be absent from work about three times per month due to her impairments or treatment and had marked impairment in her ability to maintain attention and concentration, cope with stress, perform at a consistent pace, and complete a normal workday and workweek without interruptions from psychologically-based symptoms. (T at 570). He also assessed moderate limitation in Plaintiff's ability to understand, remember, and carry out simple instructions, maintain attendance, and make simple work-related decisions. (T at 570).

Dr. Herivaux found moderate impairment in Plaintiff's ability to interact with others and notably marked limitation in her ability to respond appropriately to changes in a routine work setting. (T at 571). He did not believe Plaintiff could manage her benefits in her own interest. (T at 572).

### 2. *Dr. Sanchez*

In November of 2017, Dr. Antonio Sanchez, another treating psychiatrist, completed a medical source statement. Dr. Sanchez reported that Plaintiff was attending weekly 30 minute sessions with a therapist,

along with monthly 15 minute medication management appointments. (T at 802).  Dr. Sanchez opined that Plaintiff would be absent from work more than three times per month due to her impairments or treatment. (T at 803).

He assessed marked or extreme limitation with respect to Plaintiff's ability to maintain attention and attendance and regarding her ability to cope with work stress, perform at a consistent pace, and complete a normal workday. (T at 804).  Dr. Sanchez found Plaintiff markedly limited in her ability to accept workplace supervision and respond appropriately to changes in a routine work setting. (T at 804).  He opined that Plaintiff had marked difficulties in maintaining social functioning. (T at 805).  Dr. Sanchez believed Plaintiff could manage her benefits in her own interest. (T at 805).

### 3.   Dr. Engelberg Damari

In August of 2014, Dr. Fredelyn Engelberg Damari, a psychologist, performed a consultative psychiatric evaluation.  Plaintiff was cooperative and calm; demonstrated intact attention, concentration, and memory; had below average cognitive functioning; and displayed good insight and judgment. (T at 481-83).

Dr. Engelberg Damari diagnosed bipolar disorder, unspecified. (T at 483).  She opined that Plaintiff could follow and understand simple

directions, perform simple tasks independently, and maintain attention and concentration. (T at 483).  She explained that Plaintiff could not maintain a regular schedule due to her participation in a substance abuse program but could make appropriate decisions and had only mild impairment in social interactions. (T at 483).

Dr. Damari found Plaintiff significantly impaired in her ability to deal appropriately with stress. (T at 483).  She opined that Plaintiff's substance abuse and psychiatric problems "may significantly interfere with [her] ability to function on a daily basis." (T at 483).

4.    *Dr. Jonas*

Dr. Jonas, a psychiatrist, testified at the administrative hearing held in March of 2018 as a medical expert. Dr. Jonas was critical of the opinions of Dr. Herivaux and Dr. Sanchez, noting that they had both assessed severe functional limitations, while simultaneously finding that Plaintiff could manage her finances independently. (T at 99).[4]

In addition, Dr. Jonas found the severe limitations assessed by the treating psychiatrists inconsistent with the treatment notes, which documented mental status examinations that were "normal or relatively

---

[4] Dr. Jonas erred in this aspect of his testimony, in that Dr. Herivaux opined that Plaintiff could not manage her benefits in her own interest. (T at 572).

normal ….." (T at 99).  Dr. Jonas also noted discrepancies in what Plaintiff told medical providers about her employment history and status. (T at 101). Dr. Jonas believed these discrepancies cast doubt on the credibility of Plaintiff's self-reported symptoms. (T at 101).

Dr. Jonas also believed the medication regimen administered to Plaintiff suggested that her psychiatric symptoms were well-managed. (T at 102-103).  He questioned the consultative examiner's diagnosis of bipolar disorder as not well-supported by the record. (T at 105).  Dr. Jones likewise was critical of the use of the term "depressed" in the treatment notes, suggesting that, in his view, Plaintiff would have been better described as "unhappy" or "frustrated," as opposed to being clinically depressed. (T at 108).

### 5.   Dr. Hopper

In January of 2021, Dr. Hopper testified as a medical expert at the administrative hearing held following remand from the District Court.  Dr. Hopper noted that the record documented symptoms of depression and anxiety, which appeared to be adequately controlled by medication. (T at 922).  He opined that Plaintiff "would best be served in work situations that are simple, repetitive types of tasks with occasional contact with the public, co-workers, and supervisors." (T at 923).

Dr. Hopper assessed mild to moderate impairment in Plaintiff's ability to understand, remember, or apply information; moderate impairment with respect to social interaction; moderate limitation in maintaining concentration, persistence, and pace; and moderate impairment as to adapting or managing herself. (T at 923).  Dr. Hopper recognized that there was some waxing and waning of symptoms in the treatment notes but characterized this variability as "still under the umbrella of being adequately controlled with medication." (T at 924).

### 6.    ALJ's Consideration of the Medical Opinion Evidence

The ALJ gave "great weight" to the opinion of Dr. Engelberg Damari, the consultative examiner, finding it consistent with the mental status examinations and overall treatment record. (T at 901).  The ALJ likewise found Dr. Jonas's testimony consistent with the record. (T at 901).

On the other hand, the ALJ discounted the assessments of the treating psychiatrists, Dr. Herivaux and Dr. Sanchez, finding them inconsistent with the treatment record. (T at 899-901).  And even though Dr. Hopper testified at the January 2021 hearing the ALJ did not discuss his testimony, other than simply noting that Dr. Hopper had testified.  (T at 891).

There are two fundamental problems with the ALJ's evaluation and analysis of the medical evidence.

First, the ALJ did not sufficiently address the question of whether Plaintiff would decompensate if required to sustain a schedule and meet the demands of competitive, remunerative work.

Although the ALJ acknowledged that both treating psychiatrists believed Plaintiff would decompensate and would be unable to sustain a schedule over the course of a workday and workweek, the ALJ ignored these opinions and apparently discounted them simply because there was no previous medical evidence that she had decompensated. (T at 900, 569-72, 803-805).

The failure to give these opinions of the treating psychiatrists appropriate weight was error. The Second Circuit has recognized the particular value of treating source opinions when reviewing claims involving mental impairments.  *See Flynn v. Comm'r of SSA*, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Notably, the failure to accord due weight to the treating psychiatrists' opinions on this aspect of Plaintiff's functioning was further problematic because their opinions were consistent with the assessment of the consultative examiner, Dr. Engelberg Damari, who found Plaintiff significantly impaired in her ability to deal appropriately with stress and opined that Plaintiff's psychiatric problems "may significantly interfere with [her] ability to function on a daily basis." (T at 483).  The ALJ gave "great weight" to Dr. Engelberg Damari's assessment but did not address this critical consistency between the medical opinions. (T at 901).

Further, the record reflects that Plaintiff's counsel appeared to attempt to elicit an opinion on this subject from Dr. Hopper during the January 2021 hearing but was prevented from doing so by the ALJ. (T at 923-27).

The ALJ's sole justification for discounting the treating psychiatrists' assessments that Plaintiff would decompensate under work stress and be unable to sustain a schedule was that there was no documentation in the treatment record that Plaintiff had previously decompensated. (T at 900). The ALJ's reason, however, misses the point.  Plaintiff was living in a relatively sheltered, structured environment while she was receiving treatment and thus the fact that she had not decompensated in that

environment has little relevance to whether she would decompensate when exposed to the stress and social demands of consistent work. The ALJ instead should have addressed whether and to what extent Plaintiff's well-documented symptoms and recognized severe mental impairments would be exacerbated if she was required to work.

The Commissioner's own regulations recognize there is a difference between a claimant's ability to complete tasks in a structured environment versus the ability to complete tasks in a demanding work setting. The regulations state in relevant part that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week."  20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

Second, the ALJ erred by failing to adequately address Plaintiff's limitations with social interaction and in particular regarding her ability to interact with the public and accept workplace supervision. Dr. Herivaux assessed moderate impairment regarding Plaintiff's ability to deal with the public, accept instructions, and respond appropriately to criticism from supervisors. (T at 571).  And notably, Dr. Herivaux opined that Plaintiff had marked difficulties in maintaining social functioning.  (T at 571).  Dr. Sanchez likewise found marked impairment in social functioning and assessed marked loss in the ability to accept instructions and respond appropriately to criticism from supervisors. (T at 804).  Dr. Hopper opined that Plaintiff "would best be served in work situations that are simple, repetitive types of tasks with occasional contact with the public, co-workers, and supervisors." (T at 923).

Even though the treating psychiatrists had each opined that Plaintiff had marked impairment in social functioning, the ALJ (without justification) ignored those opinions and instead found that Plaintiff had moderate limitation in social interaction (T at 895).  To account for moderate limitation in social interaction the ALJ limited Plaintiff to only occasional contact with coworkers. But importantly, the RFC determination contains no limitation with respect to accepting workplace supervision or interacting with the

public. (T at 896).  Conspicuously absent from the ALJ's written decision is

any discussion explaining how he reached this conclusion.  The ALJ's

written decision has no explanation of what weight, if any, he gave Dr.

Hopper's opinion so there is no way for this Court to evaluate how the ALJ

reconciled his RFC determination with Dr. Hopper's assessment of

limitation in Plaintiff's ability to interact with the public and supervisors.

The failure to assess Plaintiff's ability to interact with the public and

supervisors is important because "[t]he public, supervisors, and co-workers

are distinct groups, and are separately addressed on the Commissioner's

mental residual capacity forms." *Michelle A. v. Saul*, No. 19-CV-00991-

MJR, 2020 WL 7223235, at *5 (W.D.N.Y. Dec. 8, 2020) (citation and

alteration omitted); *see also Fuller v. Berryhill*, No. 17-CV-00887-LGF, 2019

WL 421484, at *4 (W.D.N.Y. Feb. 4, 2019) ("[T]he groups of the public,

supervisors, and co-workers are distinct for purposes of assessing an

applicant's capacity to relate to others....").

The ALJ erred by imposing limitations as to only one of these three

distinct groups. And he provided no explanation as to how he drew this

distinction and cited no evidence that Plaintiff could perform work involving

unlimited interaction with the public and supervisors.  Given the significant

limitation in this domain, as assessed by the treating psychiatrists, and

recognized by the Commissioner's own medical expert, the ALJ's silence to address this domain is material error.

An ALJ must provide an adequate "roadmap" between the record and the result.  The failure to do so, as here, deprives the Court of the ability to determine accurately whether the ALJ's decision is supported by substantial evidence. *Ferraris v. Heckle*r, 728 F.2d 582, 587 (2d Cir. 1984) (noting that "the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence").

The ALJ has a responsibility to "build an accurate and logical bridge from the evidence to [his] conclusion to enable meaningful review." *Horton v. Saul*, 19-CV-8944, 2021 WL 1199874, at *12 (S.D.N.Y. March 30, 2021) (quoting *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp.2d 133, 142 (N.D.N.Y. 2012)); *see also Diaz v. Comm'r of Soc. Sec.*, No. 18-CV-8643 (SN), 2020 WL 1699996, at *11 (S.D.N.Y. Apr. 8, 2020)("The ALJ's consideration of these factors must be evident from the ALJ's decision, as the claimant is entitled to an explanation as to why the ALJ did not credit the findings of a treating physician.").

Here, there is no roadmap from the ALJ's written decision and the record evidence explaining how the ALJ reached the conclusion that

Plaintiff was limited to occasional contact with coworkers but could have unlimited contact with the public and supervisors.  Therefore, remand is mandated so that the ALJ can address these deficiencies and explain how he reconciled these limitations based upon the medical evidence and the opinions of the treating psychiatrists.

### B.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

This Court concludes that a remand is required for proper consideration of the medical opinion evidence regarding Plaintiff's ability to sustain a schedule and engage in interactions with the public and supervisors.

This Court, however, is mindful that Plaintiff's initial application for benefits has been pending for more than eight (8) years and this matter has already been remanded once. Consequently, this Court exercises its discretion and directs that further proceedings before the ALJ be completed within 120 days of the date hereof. If the decision is a denial of benefits, then a final decision shall be rendered within 60 days of any appeal by Plaintiff. *See Martinez v. Saul*, No. 19-CV-6515 (BCM), 2021 WL 2588783, at *11 (S.D.N.Y. June 23, 2021).

In addition, the Court finds that this is the rare case in which assignment to a different ALJ on remand should be directed. *See Lebron v. Colvin*, No. 13CV9140, 2015 WL 1223868, at *25 (S.D.N.Y. Mar. 16, 2015).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 21) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 30) is DENIED; and this case is REMANDED for further administrative proceedings consistent with this

Decision and Order. The Clerk is directed to enter final judgment and then close the file.

Dated: January 17, 2023          *s / Gary R. Jones*
                                 GARY R. JONES
                                 United States Magistrate Judge